Psychology of Men & Masculinity
2014, Vol. 15, No. 4, 460–469

# "Would You Tell Under Circumstances Like That?": Barriers to Disclosure of Child Sexual Abuse for Men

Scott D. Easton, Leia Y. Saltzman, and Danny G. Willis
Boston College

Although public awareness is increasing in regard to the realities of child sexual abuse (CSA) for boys, male survivors often delay disclosure of the abuse for years or even decades. Little is known about the factors that impede or obstruct disclosure for sexually abused boys/men. Because disclosure is often a prerequisite to help-seeking and accessing resources for healing, the purpose of this study was to identify barriers to disclosure of CSA for male survivors. Using content analysis, the researchers conducted a secondary analysis of data obtained from a large, nonclinical sample of men with histories of CSA ($N = 460$) who completed an online survey. The data analyzed in this study included responses to an open-ended item on disclosure barriers. Our analyses identified 10 categories of barriers that were classified into 3 domains: sociopolitical (e.g., masculinity, limited resources), interpersonal (e.g., mistrust of others, abuser factors), and personal (e.g., internal emotions, naming the experience as sexual abuse). Based on our results, these domains were distinct yet interrelated. The implications for policy, clinical practice, and future research are discussed.

*Keywords:* child sexual abuse, disclosure, barriers, male survivors, masculinity

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

Over the past decade, public awareness of the sexual abuse of boys has increased dramatically. Some of that awareness has stemmed from national news coverage of sexual abuse scandals within well-established institutions (e.g., Catholic Church, the Boys Scouts of America) and universities (e.g., Penn State; Boyle, 1994; Roman Catholic Church Sexual Abuse, 2011). Public disclosures by national figures and celebrities (e.g., Senator Scott Brown, actor Tyler Perry, former professional cyclist Greg LeMond), mainstream films (e.g., *The Kite Runner, Mystic River, The Prince of Tides, Sleepers*), and public campaigns by survivor organizations have introduced the topic to a large segment of the general public. Furthermore, researchers have found that approximately 15% of adult men report being sexually abused during childhood (Briere & Elliott, 2003; Dube et al., 2005; Lisak, Hopper, & Song, 1996). Although once considered a rare or nonexistent social problem (De Francis, 1969), the sexual abuse of boys is gaining recognition as a public health problem.

Despite improved awareness, there is still considerable stigma attached to being a male survivor of childhood sexual abuse (CSA). Many survivors remain silent about the abuse for years or even decades (Easton, 2012; O'Leary & Barber, 2008) despite experiencing considerable distress (Lew, 2004). Although much less is known about the long-term consequences of CSA for men compared with women (Spataro, Moss, & Wells, 2001), research is accumulating that suggests CSA can have detrimental effects on the physical, mental, and social health of male survivors (for reviews, see Holmes & Slap, 1998; Hunter, 2006; Putnam, 2003; Spataro et al., 2001). These negative consequences are often compounded by the decision to delay or forgo disclosure. In order to improve interventions and facilitate help-seeking for this vulnerable, marginalized population, it is important to understand disclosure obstacles for sexually abused boys/men. Given that little empirical research has been conducted on this topic, the purpose of the current study was to qualitatively examine the range of barriers to disclosure of CSA among a large, nonclinical sample of male survivors.

## Disclosure Rates

In the aftermath of sexual victimization, children often delay disclosure or use avoidance coping strategies (Alaggia, 2005; Hershkowitz, Lanes, & Lamb, 2007; Ullman & Filipas, 2005). Despite the presence of credible evidence, many children deny being sexually abused (DiPietro, Runyan, & Fredrickson, 1997) or recant their story of victimization after an initial disclosure (Malloy, Lyon, & Quas, 2007). Some research has found gender differences in early disclosure rates with boys disclosing less frequently than girls (Boudewyn & Liem, 1995; Gries, Goh, & Cavanaugh, 1996; O'Leary & Barber, 2008). Using the quantitative data from the same sample as the current study, Easton (2012) examined disclosure patterns among adult male survivors of CSA.

This article was published Online First December 23, 2013.
Scott D. Easton and Leia Y. Saltzman, Graduate School of Social Work, Boston College; Danny G. Willis, William F. Connell School of Nursing, Boston College.
The collection of data used in this analysis was funded by the John A. Hartford Foundation (Geriatric Social Work Initiative). Several organizations and individuals assisted with recruitment of participants: the Survivors Network of those Abused by Priests, MaleSurvivor, 1in6.org, and Dr. Jim Hopper. We thank Patrick Murphy and Ellen Sophis for their helpful assistance during preparation of the article. The authors are also grateful for the generosity and courage of the men who participated in this study.
Correspondence concerning this article should be addressed to Scott D. Easton, Boston College, Graduate School of Social Work, McGuinn Hall, Room 207, 140 Commonwealth Avenue, Chestnut Hill, MA 02467. E-mail: scott.easton@bc.edu

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

The researcher found that only one fourth of participants (25.7%) told anyone in childhood. On average, participants waited 21 years after the time of the abuse to tell someone, and 28 years to have an in-depth discussion about the sexual abuse. These findings are consistent with a review of the literature, which found low rates of early disclosure for sexually abused boys (10% to 33%) and that male survivors often wait long into adulthood before discussing the sexual abuse (Holmes & Slap, 1998).

### Barriers to Disclosure

In order to explain delayed disclosure for boys or men who were sexually abused, researchers have started to examine factors that impede disclosure for children. Some of the factors related to delayed disclosure for children include: older age (at the time of the abuse), close relationship to the abuser (i.e., incest), feeling responsible for the abuse, and expected negative consequences following disclosure (Goodman-Brown, Edelstein, Goodman, Jones & Gordon, 2003; Hershkowitz et al., 2007). Environmental factors such as a household with rigid gender roles, family violence, indirect or closed communication patterns, and social isolation can also deter early disclosure (Alaggia & Kirshenbaum, 2005). In their review of research on factors that influence childhood disclosure, Paine and Hansen (2002) identified barriers related to the self (e.g., shame, self-blame), family and loved ones (e.g., disruption of family), and the abuser (e.g., desire to protect). Paine and Hanson (2002) concluded that despite the clinical literature on disclosure barriers for sexually abused children, more empirical research is needed.

The empirical literature on disclosure of CSA in adulthood is even less developed than for disclosure during childhood (Ullman, 2003). One reason for this disparity is that researchers have largely conceptualized disclosure as a discrete event (e.g., telling, reporting) in childhood rather than a process that unfolds across the life span (Bradley & Follingstad, 2001; Easton, 2012; Sorsoli, Kia-Keating, & Grossman, 2008; Ullman, 2003). The few studies on disclosure of CSA for adolescents or adults have identified barriers such as shame, self-blame, and anticipation of unsupportive responses (Gilligan & Aktar, 2006; Jonzon & Lindblad, 2004, 2005; Ruggiero et al., 2004; Staller & Nelson-Gardell, 2005). However, because most of these studies were based on all female samples, it is unclear whether the findings can be generalized to male survivors of CSA.

Although some obstacles may deter disclosure for either male or female survivors of CSA, it is likely that some factors uniquely obstruct the telling process for men (Roberts, Watlington, Nett, & Batten, 2010). Within the context of the social psychology of men and masculinity, it is theorized that men's gendered identity and conformity to masculine norms can impede their prospects for well-being (Courtenay, 2000). As conceptualized within an 11-factor validated inventory, some of the masculine norms include winning, emotional control, disdain for homosexuals, and self-reliance (Mahalik et al., 2003b). The growing body of literature focused on men's psychology and health behaviors indicates strong endorsement of masculine norms are associated with a wide range of health-related problems, including negative attitudes toward psychological help-seeking (Vogel, Heimerdinger-Edwards, Hammer, & Hubbard, 2011) and lack of help-seeking behavior (Addis & Mahalik, 2003).

Within this social psychological context of men and masculinity, the experience of CSA violates gender norms and expectations for boys and men in Western culture; both victimhood and homosexuality are often denigrated in the male socialization process (Mahalik, Good, & Englar-Carlson, 2003a; Mahalik et al., 2003b; Spataro et al., 2001). Given that boys are often sexually abused by another male, many survivors experience a compounded sense of shame and stigma due to homophobia (Holmes, Offen, & Waller, 1997) and fear being viewed as a homosexual, a victim, or a future sexual offender (Alaggia, 2005) following disclosure. Another barrier to disclosure is the naming process associated with abuse experiences. Many men who meet objective criteria for CSA do not label the experience as sexual abuse (Fondacaro, Holt, & Powell, 1999; Holmes, 2008; Widom & Morris, 1997), possibly due to lack of awareness of legal definitions, feelings of complicity, or minimization (Sorsoli et al., 2008; Widom & Morris, 1997).

External barriers are another impediment to disclosure for male survivors. Child protection workers and law enforcement are less likely to substantiate cases of CSA involving boys compared with girls (Dersch & Munsch, 1999). Clinicians often have biases that obstruct the identification, assessment, and treatment of CSA in male clients (Holmes & Offen, 1996; Holmes et al., 1997; Lab, Feigenbaum, & DeSilva, 2000). Also, treatment services are often designed primarily to meet the needs of female survivors (Hooper & Warwick, 2006).

In one of the only studies that examined the challenges of disclosure for male survivors of CSA, Sorsoli, Kia-Keating, and Grossman (2008) conducted semistructured interviews with 16 men. The researchers identified barriers to disclosure in three domains: personal (e.g., shame), relational (e.g., fears of negative repercussions), and sociocultural (e.g., myths surrounding masculinity). Although some barriers apply to either male or female survivors, the researchers concluded that disclosure is, essentially, a gendered experience and that male survivors often face unique obstacles (Sorsoli et al., 2008). Because of their sample composition (e.g., 75% survived incest, 50% held advanced degrees, 44% self-identified as gay or bisexual), Sorsoli et al. (2008) concluded that more research with larger, more representative samples is necessary to understand the full range of disclosure barriers for men. To address the gap in the knowledge base for male survivors, the purpose of the current study was to analyze a set of qualitative responses regarding barriers to disclosure among a large, nonclinical sample of 487 men with self-reported histories of CSA ranging in age from 18 to 84 years.

## Method

### Recruitment and Data Source

The original study from which the qualitative data for this secondary analysis was drawn used a cross-sectional survey design with purposive sampling from three national organizations dedicated to helping survivors of CSA: the Survivors Network of those Abused by Priests (SNAP), MaleSurvivor, and 1in6.org. Although all of these organizations provide a range of support services to services, only SNAP and MaleSurvivor have formal membership structures. For recruitment of participants, all three organizations posted the study announcement online; SNAP also sent recruitment e-mails to its members. The study announcement directed

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

participants to the survey Web site which displayed a welcome message, consent letter, and eligibility screening questions. To be eligible for the study, participants had to self-identify as being: male, 18 years of age or older, and sexually abused before the age of 18. Interested, eligible participants then completed an anonymous, Internet-based survey—the 2010 Health and Well-Being Survey—during an 8-week period from late April, 2010 through late June, 2010.

### Procedure for Protection of Human Subjects

The original study received human subjects approval from the Institutional Review Board (IRB) at a Midwestern university; during the secondary analysis, human subjects approval was also received from an IRB at a research university in the Northeast. In the original study, several safeguards protected the safety and privacy of the participants (e.g., therapist locator, list of community mental health centers, suicide prevention hotline). Prior to implementation, the survey underwent pretesting over a 2-year period with input from national sexual abuse and trauma experts, clinicians, and graduate students in social work. The final survey consisted of 137 items organized into several sections. The current analysis was based on a single, open-ended item from the disclosure history section of the study.

### Sample

A total of 487 men completed the 2010 Health and Well-Being Survey. Of that sample, most participants (94.5%) provided a response to the open-ended item of interest in this study. Thus, the final sample for our qualitative analysis included 460 men with histories of CSA who ranged in age from 19 to 84 years. The majority of participants were members of a survivor organization. In terms of sexual abuse experiences, participants provided information based on the first time they were sexually abused. The men in the study were, on average, 10.3 years old at the time of the sexual abuse. Most participants (94.6%) were sexually abused by another male. In terms of relation to the abuser, participants reported being sexually abused by a member of the clergy (61.7%), a biological family member (11.3%), another child or adolescent (9.1%), a teacher or coach (6.8%), an adult neighbor (3.9%), an adult stranger (1.6%), or other (5.5%; see Table 1 for additional information on the characteristics of the sample).

### Data Analysis

Qualitative data of participants' type-written responses to the following item were imported into an Excel document for easy retrieval during analysis: "*Some men take many years to tell someone that they were sexually abused. Others choose to never tell. Please describe why it may be difficult for men to tell someone about/discuss the sexual abuse.*" The three authors analyzed the data using qualitative conventional content analysis (Hsieh & Shannon, 2005) to identify descriptive codes (Miles & Huberman, 1994) that captured the key ideas related to the research question, "What do male survivors perceive as the reasons for why it may be difficult for men to tell someone about their sexual abuse?" This method of analysis is an appropriate choice for qualitative research when an area of inquiry has not resulted in an extensive literature or substantive theory development (Hsieh & Shannon, 2005).

Table 1
*Demographic and Sexual Abuse Information of Participants (N = 460)*

|  | % | Mean (SD) | Range |
|---|---|---|---|
| Demographic background | | | |
| Age |  | 50.70 (10.78) | 19–84 |
| Race (% minorities) | 9.3 | | |
| Education | | | |
|    High school diploma or less | 10.7 | | |
|    College or technical courses | 22.8 | | |
|    Associate's degree | 8.0 | | |
|    Bachelor's degree | 30.0 | | |
|    Master's degree | 20.0 | | |
|    Doctorate or professional degree | 8.3 | | |
| Income[a] |  | 6.29 (3.81) | 1–12 |
| Cohabitation (% yes) | 68.5 | | |
| Years of cohabitation |  | 18.67 (9.86) | 1–49 |
| Survivor organization membership | | | |
|    MaleSurvivor | 15.4 | | |
|    SNAP | 59.6 | | |
|    Both | 5.7 | | |
|    Neither | 18.9 | | |
| Sexual abuse characteristics | | | |
| Age at time of the sexual abuse |  | 10.3 (3.83) | 1–18 |
| Abuser gender (% male) | 94.6 | | |
| Relation to abuser[b] | | | |
|    Clergy member | 61.7 | | |
|    Biological family member | 11.3 | | |
|    Child or adolescent | 9.1 | | |
|    Teacher or coach | 6.8 | | |
|    Adult neighbor | 3.9 | | |
|    Adult stranger | 1.6 | | |
|    Other | 5.5 | | |
| Duration of sexual abuse | | | |
|    Less than 6 months | 30.2 | | |
|    6 months to three years | 32.3 | | |
|    More than three years | 34.3 | | |
| Penetration (% yes) | 55.2 | | |
| Abuser used physical force (% yes) | 35.7 | | |
| Physical injury from sexual abuse (% yes) | 20.9 | | |

[a] For household income, participants were asked to report their total household income in the past year and presented with 12 response choices ranging from less than $20,000 (1) to more than $120,000 (12). The mean for income was 6.29 which corresponded to the category of $60,000 to $69,000.  [b] Participants identified their relation to the abuser during the *first time* they were sexually abused by choosing one of several responses. Biological family member is a recoded category that combines biological parent, aunt/uncle/grandparent, and brother/sister.

The analysis transpired in several inductive phases. In the beginning phase, data were broken into segments consisting of a similar number of responses. In analyzing the first segment of data, each author independently reviewed the participants' comments word-by-word and line-by-line (Miles & Huberman, 1994; Morgan, 1993). The coding of the data in this phase stayed close to the participants' own words rather than using an interpretive lens or a predetermined coding scheme (Hsieh & Shannon, 2005). For example, when a passage of text referred specifically to "feeling shame," each author coded the passage of text with the code "shame." Shame was later sorted into a larger category labeled as "internal emotions." As a validity check, the authors met in several follow-up meetings to compare notes, discuss codes, develop preliminary definitions of codes to guide subsequent analysis, and

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

to reach consensus about analytic decisions regarding *each* passage of text in the first segment of the data. During the first phase of analysis, we identified and defined 23 separate codes and sorted them into eight categories.

The middle phase of analysis followed similar processes to the beginning phase. In this phase, each author independently applied the same set of defined codes to the other segments of data. The authors also regularly met to discuss, compare, and reach consensus on coding and categorization decisions for all of the data, thereby assuring reliability. During the middle phase of analysis, the code list was revised and refined several times; new codes were added, existing codes were collapsed and categorized, and definitions of codes were refined. The original code list was expanded to 36 codes, which were sorted into nine categories. An audit trail of key decisions was maintained throughout the analyses.

In the last phase, the authors utilized a final set of defined categories of barriers and critically reviewed the categories to understand how they fit together and why men may not tell/disclose. Our analysis resulted in 10 separate categories of barriers conceptualized within four domains (sociopolitical, interpersonal, personal, and practical consequences). As part of the last phase, the authors reevaluated the categories depicted within the practical consequences domain. Our focus was to determine if those categories might be adequately captured under the other domains, given that these consequences were manifested at the personal and interpersonal levels. After a careful review of the categories and data, we made an analytic decision to remove the practical consequences domain and move its data into either the personal or interpersonal domain. As a validity check, we recoded *each* participant response within the practical considerations domain to ensure that it fit accurately within the other domains. Thus, the final product of our analysis consisted of three domains (sociopolitical, interpersonal, and personal) and included 10 categories of barriers.

## Results

### Sources of Barriers

The barriers to disclosure, identified by men in this study, reflect a complex, multilevel interaction between the person and the environment. As such, our Venn diagram depicts three primary domains of barriers that deter, obstruct, and discourage men from disclosing CSA: (a) sociopolitical, (b) interpersonal, and (c) personal (see Figure 1). Within each domain, there are different categories of barriers, which we describe in the following sections using representative quotes from participants. It is important to note, however, that the majority of participants identified multiple categories of barriers; almost half of the participants mentioned barriers from different domains (see Table 2). Although the domains are presented as distinct groupings, their overlap reflects the simultaneous influence of multiple factors on the decision making process of disclosure for male survivors. Additionally, fear frequently emerged in participants' responses. When participants referred to fear in a general manner, we situated the data in the internal emotions category within the personal domain. However, when participants reported specific fears (e.g., fear of being blamed by others), we situated the data in the appropriate category within another domain (i.e., interpersonal).



*Figure 1.* Visual representation of disclosure barrier domains and categories.

### Sociopolitical Domain

The sociopolitical domain consists of broad social values (e.g., gender norms) that can interfere with disclosure of CSA as well as tangible manifestations of the sociopolitical values (e.g., limited resources).

**Masculinity.** Western social norms regarding masculinity are transmitted through the gender socialization process and were prevalent in the data. Given that the experience of CSA violates masculine norms such as self-protection, many participants felt weak, frightened, confused, or guilty around the time of the abuse. One participant stated: "Feeling weak and powerless, even for little boys, is a terribly painful experience" (Participant 004). Other participants used words such as emasculation, degradation, and demoralization to describe the effect of the sexual abuse on their self-identity and development. Participant 356 succinctly stated: ". . . sexual abuse to a man is an abuse against his manhood as well."

In the aftermath of the abuse and in the years that followed, many men believed that they should exhibit traits and characteristics that typify norms of masculinity such as a appearing strong and able to protect themselves. Survivors felt that disclosing the sexual abuse to another person would enhance, prolong, and reinforce feelings of vulnerability and weakness. One participant explained: "Being abused assumes you were somehow weak and allowed the abuse to happen . . . there is still a sense that talking about the abuse and the effect it had on you just reveals another level of weakness in you" (Participant 231). Similarly, "[Sexual abuse] is deeply shameful, makes us look weak, damaged, inferior, unworthy, unmanly" (Participant 190) and "It is the ultimate shame for a man to be taken against his will" (Participant 385). Thus, the decision not to disclose was perceived as a method of preserving a sense of masculinity. Instead of discussing with others, participants mentioned strategies such as toughing it out, being macho, remaining stoic, and handling it themselves.

For many men, expressing intense emotion was also perceived as a violation of masculine norms. Men anticipated that the disclosure process would elicit strong emotions (e.g., sadness, humil-

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

Table 2
*Frequency of Disclosure Barrier Domains and Categories (N = 460)*

| Domain & categories | N | % of total sample |
|---|---|---|
| Sociopolitical domain | 174 | 37.8 |
| 1. Masculinity | 173 | 37.6 |
| 2. Limited resources | 14 | 3.0 |
| Interpersonal domain | 232 | 50.4 |
| 1. Mistrust of others | 149 | 32.4 |
| 2. Fear of being labeled as gay | 59 | 12.8 |
| 3. Abuser factors | 47 | 10.2 |
| 4. Safety and protection issues | 53 | 11.5 |
| 5. Past negative responses from others | 34 | 7.4 |
| Personal domain | 309 | 67.2 |
| 1. Internal emotions | 246 | 53.5 |
| 2. Naming the experience as "sexual abuse" | 89 | 19.3 |
| 3. Concerns related to sexual orientation/identity | 39 | 8.5 |
| Number of domains (referenced by participants) | | |
| One | 247 | 53.7 |
| Two | 158 | 34.4 |
| Three | 55 | 12.0 |
| Number of categories (referenced by participants) | | |
| One | 208 | 45.2 |
| Two | 130 | 28.3 |
| Three | 78 | 17.0 |
| More than Three | 44 | 9.6 |

*Note.* Because participant responses often included barriers that are classified within more than one category within the same domain, the category counts within the same domain do not sum to the total count for the domain.

iation) or reactions (e.g., crying) that they would be unable to control. Participant 274 stated:

> In Western culture, men are taught to be the tough ones: they're not to cry, they're supposed to have the answers, be the providers, and above all it's not okay to show emotion. Would you tell under circumstances like that?

Some men in the study reported that social attitudes toward sexual encounters for boys influenced their decision not to disclose. Societal messages that minimize, normalize, or even promote sexual encounters between boys and older women, for example, contradict the traumatic nature of the sexual abuse as experienced by many survivors. Participant 042 reported: "People have an attitude that boys should consider it a victory if a woman lures them into sex . . ." Conversely, social attitudes against same-sex sexual encounters also act as barriers to disclosure for survivors who were abused by another male, but will be discussed under the sexual orientation category. Overall, issues surrounding masculinity were pervasive in our results; it was the second most-frequently coded category.

**Limited resources.** Values related to masculinity permeate societal attitudes toward male survivors of abuse, and are reflected in the lack of tangible resources respondents perceived as available to them. For example, "It is common to hear the abuse of girls, but the abuse of boys is rarely ever discussed" (Participant 005) and "Male sexual assault is often believed to be a myth by many. It seems [people] easily understand men raping women, but the idea of men being raped is something they just cannot fathom" (Participant 265). Many of the men stated that a general lack of awareness of the experiences and needs of male survivors contributes to the lack of male-centered services. Men identified settings in which female survivors can access services that are ill-equipped to work with male survivors (e.g., counseling practices, sexual assault/rape crisis centers). Participant 220 explained:

> Society has gone to great lengths to get the issue of women's abuse out of the closet, and out in to the open. The notion that men can be victims has unfortunately not evolved in the same way. In my early explorations about possibly seeking help I can't tell you how many sexual assault centers simply do not provide services to men with historical abuse.

**Interpersonal Domain**

Many of the attitudes, norms, and values of society are concretized in interpersonal relationships. The barriers in this domain emerge primarily through social interactions with others or pertain to social relationships. Most of the barriers revolve around potential negative consequences that could result from future disclosures. However, one category consists of barriers based on actual historical events (i.e., past negative responses to disclosure).

**Mistrust of others.** Many men were reluctant to disclose because they had difficulty trusting others: "[I] didn't know who to trust" (Participant 151), "[the abuse] made me not trust adults" (Participant 223), and "the only way to tell safe people is to learn trust all over again, which was destroyed by the abuse" (Participant 413). For many men, the abuser shattered notions of trust: "As a young child, the person I most trusted in the world [the pastor] became my abuser" (Participant 148). A large number of men reported thinking "I am the only one" (Participant 033) and feared that "no one would believe" (Participant 196) them if they disclosed.

Another manifestation of mistrust was in men's fears that disclosure could result in negative social consequences such as being judged, blamed, criticized, or even ostracized. Participants said ". . . the social stigma of men letting it out is HUGE" (Participant 171) and that talking about CSA ". . . leaves a stigma of being damaged and screwed up beyond repair" (Participant 427). Participant 358 stated:

> There are many reasons why men find it difficult to talk about their abuse and choose to never speak about it at all: shame, guilt, doubt, denial, fear of not being believed, loved, cared for, fear of being judged, abandoned, and alienated.

Some men expressed a fear of rejection, abandonment, and the potential for loss or change in relationships. Of particular concern to some survivors was the fear that disclosure would lead others to suspect them of becoming a future perpetrator or predator. For example, Participant 318 reported that a disclosure barrier was: ". . . the assumption that young sexual abuse victims invariably become perpetrators themselves"; Participant 139 stated: ". . . fear of being thought dangerous toward children."

Mistrust of others was intensified by an overwhelming sense of doubt about whether others would, or could, respond appropriately to disclosure. Participants felt that others would accuse them of making false allegations or of being a cooperative participant (rather than a victim). Many men were concerned that others would minimize or misunderstand the sexual abuse experience. Participant 253 wrote: "fear of being misunderstood, fear of being

told it's not a big deal get over it." Other participants felt that such responses could result in further stigmatization or feeling blamed. Even if men felt that they would be believed, men had little confidence that others would be able to provide any form of help after the disclosure. Finally, not all men anticipated specific negative outcomes, but instead expressed a generalized concern over being unable to predict responses from others and the outcomes of disclosure. For these men, mistrust manifested itself in the fear of unknown consequences, which prevented them from disclosing CSA. Overall, mistrust of others was the third most frequently coded category of barriers.

**Fear of being labeled "gay."**  Fear of being labeled "gay" and homophobic responses from others combined to create a powerful barrier to disclosure for male survivors in our sample. Although this barrier is related to notions of masculinity discussed earlier, we situated it within the interpersonal domain because participants indicated that the concerns emerged within the context of interactions with others (internal struggles over one's sexual orientation will be presented separately in the Personal Domain section). Men abused by male perpetrators, for example, felt that their experiences violated well-established social norms related to heterosexuality. One survivor asked: "What normal male wants to tell others that he was abused by an old man, a teacher, or a priest?" (Participant 352). Thus, this barrier represents a specific, distinct form of judgment by others.

Many men expressed an intense fear that their sexual orientation would be questioned if they were to disclose being abused by a male perpetrator. Some participants stated: "There is some question in people's mind that the victim might be gay or wanted the incident to happen" (Participant 134), "Men don't want to admit they've been abused for fear of being labeled gay" (Participant 286), and "Fears of embarrassment of being thought of as homosexual" (Participant 321). Male survivors who self-identify as heterosexual are often fearful that others would use their abuse experiences as evidence of homosexuality. Participant 022 explained:

> Sexual abuse, especially between a male perpetrator and male victim is problematic . . . because it tends to be a societal statement about a person's manhood and sexual orientation. That is, gay sex = bad. Abuse = bad. Gay abuse = really bad. I think many men who were abused by men assume that people will think that they are gay even when they are not.

Additionally, some survivors who self-identified as gay or bisexual feared that others would use their abuse history to explain or rationalize their sexual orientation, or thought others would believe that being abused by a man "made me gay" (Participant 223). Homosexual survivors believed that they would have to face additional stigma and blame if they disclosed: "If you're gay, you think that people will think [the sexual abuse] was something you wanted" (Participant 189).

Finally, several participants listed possible homophobic attitudes and responses from others as a barrier to disclosure. For instance, Participant 318 stated: "There has been far too much discrimination against homosexual men and women for me to disclose early same sex abuse" Participant 320 explained that others might criticize the victim as ". . . an abomination and a freak of nature, and especially in the "church" families . . . you are for sure condemned to damnation."

**Abuser factors.**  By its nature, CSA involves a power differential between the perpetrator and the child victim based on many factors (e.g., age, physical size, reputation in the community, professional status). This imbalance can act as a barrier to disclosure both at the time of the abuse and in the years that follow. Some participants, for example, stated that their perpetrators threatened to harm them if they reported the abuse. These threats created an extreme sense of helplessness for some survivors that extended into adulthood: "I thought he [the abuser] would come after us and harm us" (Participant 015). Aside from physical threats, the abusers used other silencing tactics such as demands of secrecy, privileges, and even threats of disclosure. One participant wrote:

> Fear kept me quiet . . . sometimes he would threaten to tell on ME! I was so embarrassed . . . he had convinced me that if anyone found out, I would be the one people found disgusting, so I actually started to protect him if anyone got suspicious (Participant 441).

The same survivor reflected: "For me, I didn't tell because the coach who abused me made it clear from the beginning that it was a secret. I did admire him, and he betrayed that trust by turning it into something sexual."

Many men in the sample reported being abused by clergy members and faced additional disclosure barriers. Clergy members hold extraordinary power due to their social status in the community and the association between the abuser and the survivor's faith in God. Participants explained: "How can a man get raped, and by a priest, it's the same as getting raped by God" (Participant 001) and "I was told by the priest who abused me that I would go to hell if I told anyone" (Participant 077). Many men felt the abuser's status would negatively influence the response to disclosure from others. One survivor explained that priests enjoy a "rock-star status" in the community: "Most were well-liked . . . and were elevated in status . . . most survivors [of clergy sexual abuse] were intimidated into silence and never made an accusation out of fear of not being believed" (Participant 033). Other abusers who were not clergy members (e.g., teachers, coaches, policemen) were also protected by their social status and instilled fear and self-doubt in the survivors, thus, creating additional disclosure barriers.

**Safety and protection issues.**  Some men reported that disclosing might jeopardize their own basic safety and security in terms of housing, employment, and physical well-being. For example, these survivors identified possible negative outcomes such as being evicted by their landlord, being fired by an employer, or being beaten by a parent. However, most of the responses within this category detailed concerns about protecting others. Many men stated that the topic of sexual abuse was taboo and uncomfortable for others to discuss. "People appear horrified and disgusted every time I've heard a [survivor] even imply that he might have been molested by a man" (Participant 014). Participant 047 said that CSA is "too sad and disgusting, people don't want to hear about it." Given the nature of the topic, survivors avoided disclosure to protect others from the discomfort. One survivor summarized:

> We are soldiers of an unpopular war and no one wants to see us on parade. We remind them of something that makes them uncomfortable. We're like burn victims, except people either made us or hate us, not the person who poured gasoline on us and lit the match (Participant 073).

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

Men also wanted to protect family members, friends, and their community from experiencing negative outcomes such as shame, humiliation, and distress as a result of their disclosure. Several participants did not disclose in order to protect their parents: "I could not tell my parents because it would break their hearts" (Participant 249) and "I'll tell [others about the sexual abuse] when my parents are dead" (Participant 261). Other participants remained silent about the sexual abuse to protect their partner/spouse, other family members, or friends. Participant 520 explained: "My wife and her family are very religious, and Catholic. It would devastate them to find out about what happened to me."

**Past negative responses from others.**   In addition to the long list of *potential* negative consequences of future disclosure discussed above, survivors identified *actual* negative events that occurred in the past as a barrier to disclosure. Men provided many examples of harsh responses to prior disclosures: "I tried to tell my father once and he hit me" (Participant 009), "My mother told me I was evil" (Participant 435), and "I went to confession to a visiting priest and was shouted at and told I was a liar/making it up" (Participant 492). Participant 073 wrote:

> I would be very careful about telling anyone; in all but two cases (therapist and second wife) it came back to haunt me. Although I was only a month past my 11th birthday when I was assaulted, I was told it was my fault, I was a "fag," I liked it, I should just forget about it, and so forth.

Some participants were told not to tell anyone else because of the disgrace it would bring to themselves, their family, or their community (e.g., parish, neighborhood). Thus, having a previous negative disclosure deterred men from subsequent and future disclosures.

**Personal Domain**

The personal domain is comprised of a set of barriers that are narrower in scope and more internally focused than barriers in the other domains. Although these barriers are shaped by societal values and interpersonal relationships, they are distinct in that they focus on the emotional and cognitive level of the individual.

**Internal emotions.**   Participants identified a long list of strong negative emotions that deter disclosure not only in childhood, but also across the life span. In fact, negative emotions were the most frequently identified barrier to disclosure by participants in the study. Some of the negative emotions included: shame, embarrassment, self-blame, humiliation, generalized fear, guilt, low self-esteem, anger/hate/rage, loss of control, confusion, pain, and disgust. For example: "The feeling of embarrassment is the most difficult part" (Participant 507) and "The shame and stigma associated with the abuse was overwhelming" (Participant 080). Similarly, many men said that the sexual abuse led to a sense of worthlessness, of being contaminated, and of being permanently damaged. Although less frequent than emotions such as shame and embarrassment, some men expressed a sense of hopelessness or futility about disclosure in adulthood: "Nothing can be done since it was so long ago" (Participant 216), and ". . . [telling] will not change the situation" (Participant 284).

Additionally, barriers within other the other domains help explain *how* negative emotions act as barriers to disclosure. Many of the men who experienced, acknowledged, or expressed intense negative emotions believed that they had violated masculine norms. Participant 090 explained:

> Because the pain is so intense you don't think anyone will understand it. As a man you're not supposed to feel that level of pain, that level of loneliness, that deep, deep, deep feeling of being utterly and completely alone. Of being lost in a darkness so complete there's no hope of light.

For some men, the source of the negative emotions were cognitive inaccuracies regarding responsibility and self-blame for the abuse often instilled by the perpetrator. Overall, this was the most frequently coded category of barriers in the study and the only category mentioned by more than half of the participants.

**Naming the experience as "sexual abuse."**   For some men, the process of labeling and naming personal experiences was hindered by an inability to recognize childhood events as abusive. For example, some participants referred to CSA as ". . . just part of growing up" (Participant 023); another participant said "I wasn't sure if it was actually abuse or not" (Participant 024). Due to labeling issues, many men reported difficulties making connections between CSA and current psychological, relational, or physical problems.

Some survivors were not able to name the experience as abuse due to repressed memories: "I simply did not remember the abuse until my perp died" (Participant 315). For survivors that did remember the abuse, many tried to block or file away the memories to avoid experiencing and expressing intense emotions. A survivor stated: "I completely blocked it out of my mind almost all of my adult life" (Participant 383). For some men in the study, substance use enhanced their ability to numb some of the negative emotions and suppress distressing memories: "Long-term drug abuse clouded my memories of sexual abuse" (Participant 017). If memories could not be suppressed, some men opted to use silence and denial as coping methods: "Wanted to deny it. If it is not said, it didn't happen" (Participant 544) and "[most survivors] wish to erase the past, forget about it—put it behind for good" (Participant 385). As a result, coping strategies used to suppress or repress memories prevented many men from disclosing sexual abuse experiences. Participant 106 summarized: ". . . not telling had become the default. When you hold something in for 15 years or so, it becomes quite buried."

**Concerns about sexual orientation/identity.**   As mentioned earlier, the vast majority of men in the sample were sexually abused by another man. As a result of being abused by a male perpetrator, some survivors questioned their own sexual orientation, thereby creating an additional barrier to disclosure. For instance, one survivor stated: "I thought I was a closet homosexual my whole life even though I never had a consensual relationship with another man" (Participant 153). Given that sexual orientation is a core part of one's identity, the questioning caused by the abuse can be very disturbing for survivors:

> The analogy that fits best for me is one likening the abuse to the experience of men on the beaches of D-Day. The experience is so overwhelmingly traumatic . . . that it is almost impossible to describe. When the guilt and shame of having participated in the experience is acknowledged, it raises questions about one's own sexuality that are difficult to confront and, for some, impossible to face (Participant 395).

## Discussion

This analysis examined barriers to disclosure of CSA among a large sample of adult men with histories of CSA (N = 460). Based on our data, it appears that the decision-making process surrounding disclosure often involves weighing the potential risks and benefits associated with telling others about the sexual abuse. Men who had made prior disclosures relied heavily on their previous experiences (which were often negative) when considering whether to disclose again. Men also considered the potential negative consequences of disclosing. Our conceptualization of disclosure barriers classified these concerns into three domains—sociopolitical, interpersonal, and personal—each consisting of multiple categories of barriers. Our results also indicated that most participants reported multiple barriers to disclosure that were derived from different sources. The multiple barriers represent formidable obstacles to disclosure and form a complex web of deterrents. As one survivor summarized: "To put it in a nutshell, there are thousands of things that go through your head" (Participant 124).

Our findings are consistent with much of the existing literature on early disclosure for survivors of CSA. Many of the internal emotions such as guilt, shame, and self-blame within the personal domain align with results from previous studies (Goodman-Brown et al., 2003; Hershkowitz et al., 2007). Similar to research with adult survivors of CSA (Jonzon & Lindblad, 2004; Staller & Nelson-Gardnell, 2005), a chief barrier to disclosure in our study was the fear of receiving an unsupportive or hostile response. We did, however, identify barriers that appear to be uniquely problematic for male survivors including: difficulties with naming the experience as sexual abuse (Fondacaro et al., 1999; Holmes, 2008; Widom & Morris, 1997), heightened stigma and shame due to homophobia (Alaggia, 2005; Holmes et al., 1997), fears of being perceived as a homosexual or a victim (Alaggia, 2005; Sorsoli et al., 2008), and the lack of male-friendly services (Hooper & Warwick, 2006). Our findings also are consistent with the multiple levels of barriers to disclosure as proposed by Sorsoli et al. (2008). Our study expanded on their findings, however, using a larger sample of adult male survivors of CSA with a wider range of backgrounds.

Based on our dataset, we concur that disclosure is seldom a discrete, one-time event, but rather a complicated, extended process that unfolds over the life span (Bradley & Follingstad, 2001; Easton, 2012; Ullman, 2003). Some men reported that prior negative reactions to early disclosures deterred them from discussing the abuse with others until years later in adulthood. But even in adulthood, survivors indicated that they go through a complicated decision-making process that balances the potential costs and rewards of disclosing.

Due to the complexity of the disclosure process for men, interventions that address barriers at different levels are needed. Despite some progress, our results suggest that societal attitudes toward masculinity and victimhood act as powerful deterrents to disclosure and help-seeking for male survivors. To reduce stigma and misinformation and raise public awareness about the sexual abuse of boys, educational media campaigns could be developed and modeled after existing public health initiatives such as the *Real Men, Real Depression* series. These campaigns could encourage men to reach out for social support and address myths surrounding masculinity, victimhood, and sexual abuse.

Another policy implication is the allocation of resources to improve the quality and quantity of clinical treatment services available to male survivors. Some participants perceived that facilities such as rape crisis centers were unfriendly toward male clients; other participants reported that they were flatly denied access to recovery services. Improvements in the access to and delivery of treatment services need to be made across a wide range of settings (e.g., crisis hotlines, independent practice, inpatient psychiatric departments). Professional organizations should offer more training opportunities that increase the cultural competence of psychologists and mental health professionals who treat male clients, especially those with histories of abuse. The curriculum of graduate education programs in psychology, social work, nursing, and other disciplines should also be infused with content on sexual abuse and boys/men.

Our findings also have implications for clinical work with male survivors of CSA. Due to high levels of fear and mistrust of others, survivors could benefit from a safe, supportive therapeutic relationship in which disclosure takes place. A well-developed therapeutic relationship may also provide assurances that many survivors need in order to process the multitude of emotions surrounding the sexual abuse. Psychologists and mental health professionals can help clients who meet criteria for CSA recognize and label the experience as sexual abuse. Rather than being a normal part of boyhood, sexual abuse can be reframed as an adverse childhood experience associated with a wide range of serious health problems.

As part of treatment plans, therapists can connect male survivors to the growing number of online support resources and help them discern opportunities for safe disclosures to people in their current social networks. Therapists can also assess their clients' internalized norms of masculinity and, if necessary, help modify them to create space for emotional expression (Kia-Keating, Grossman, Sorsoli, & Epstein, 2005). Other issues that might be addressed include the extent to which the sexual abuse may have affected the survivor's gender identity and sexual orientation and the survivor's level of self-blame. By deconstructing myths related to sexual abuse, sexual identity, and masculinity, therapists can alleviate some of the emotional burdens that survivors may have carried for years.

In addition to policy and clinical implications, the results have implications for research. Because disclosure often precedes help-seeking or treatment, more research is needed to develop empirically validated interventions that promote disclosure earlier in the life span for men. For example, universal screening assessments that use developmentally appropriate language might help identify boys who were sexually abused. However, more research is needed to discern the most effective content and setting for these assessments. Additionally, future studies should expand the knowledge base by examining factors that *facilitate* disclosure of CSA for men. Although our study focused on disclosure barriers, we received responses that referenced events or factors that promoted disclosure (e.g., discovery of other victims from the same perpetrator; accessing support resources; the arrest, trial, or death of the perpetrator), which should be explored further.

There are several limitations that are important to consider. Consistent with qualitative methods, the sample for this research

was purposive as over 80% of the men participating in the study were members of a national sexual abuse survivor organization. These organizations offer recovery resources (e.g., online discussion forums, psycho-educational materials, conferences) that could affect men's perceptions of barriers to disclosure. Similarly, nearly two thirds of the study participants were survivors of clergy abuse. It is possible that men who are sexually abused by religious figures may face different disclosure barriers than men abused by teachers, coaches, or others. Our sample was also limited in terms of the percentage of racial minorities (9.3%), which made it difficult to detect any disclosure differences based on race or ethnicity. Some research has found that cultural factors related to ethnicity and religion can impede discussion of CSA (Gilligan & Ahktar, 2006). Thus, the men who enrolled in this study may be different in systematic ways from male survivors in the general population.

To improve external validity, research using representative samples of male survivors from the general population is needed. Researchers can build on the findings in this study and explore other research questions such as whether barriers to disclosure differ based on characteristics of the abuse (e.g., clergy abuser, severity) or other personal factors (e.g., race, ethnicity, religion). Future studies that include male survivors from diverse backgrounds would be valuable in identifying salient factors for crafting culturally sensitive interventions.

Another limitation was the research design in which data were collected: a single open-ended item in an anonymous, one-time, online survey. In addition to eliciting a rich data set on a sensitive topic, this design maximized privacy protections and minimized administrative burdens for participants. However, the design allowed us to analyze men's perceptions at only one circumscribed point in time without the possibility of follow-up questions. Because the length of responses varied from one word to several pages, it is also important to interpret the frequencies in Table 2 as general guidelines (rather than precise counts). To gain more insight into the complexities of the disclosure process for men, future studies can extend these findings by using more in-depth data collection strategies and longitudinal designs.

Despite these limitations, to our knowledge, this is the largest qualitative data set to have been analyzed with an explicit focus on discerning adult male survivors' perceptions of barriers to disclosure of CSA. Consequently, our findings present a broader range of barriers than previously identified in the research literature and illustrate their influence on the decision-making process for male survivors. Of particular importance, our findings highlight the need for expanded resources and knowledge-based, male-sensitive services that account for the complex situation of being male and having experienced CSA. Some of the complexities include difficulty naming the sexual abuse, heightened stigma and shame, fears of being labeled (e.g., weak, "gay"), and concerns about negative responses from others. Our findings also suggest the need for further research and health policies that address screening for CSA with males using a developmentally appropriate framework and language such that early identification is enhanced.

## References

Addis, M. E., & Mahalik, J. R. (2003). Men, masculinity, and the contexts of help-seeking. *American Psychologist, 58,* 5–14. doi:10.1037/0003-066X.58.1.5

Alaggia, R. (2005). Disclosing the trauma of child sexual abuse: A gender analysis. *Journal of Loss and Trauma, 10,* 453–470. doi:10.1080/15325020500193895

Alaggia, R., & Kirshenbaum, S. (2005). Speaking the unspeakable: Examining the impact of family dynamics on child sexual abuse disclosure. *Families in Society, 86,* 227–234. doi:10.1606/1044-3894.2457

Boudewyn, A., & Liem, J. (1995). Childhood sexual abuse as a precursor to depression and self-destructive behavior in adulthood. *Journal of Traumatic Stress, 8,* 445–459. doi:10.1002/jts.2490080307

Boyle, P. (1994). *Scout's honor: Sexual abuse in America's most trusted institution*. Rocklin, CA: Prima Publishing.

Bradley, R. G., & Follinstad, D. R. (2001). Utilizing disclosure in the treatment of the sequelae of childhood sexual abuse: A theoretical and empirical review. *Clinical Psychology Review, 21*(1), 1–30. doi:10.1016/S0272-7358(00)00077-5

Briere, J., & Elliot, D. M. (2003). Prevalence and psychological sequelae of self-reported childhood physical and sexual abuse in a general population sample of men and women. *Child Abuse & Neglect, 27,* 1205–1222. doi:10.1016/j.chiabu.2003.09.008

Courtenay, W. H. (2000). Constructions of masculinity and their influence on men's well-being: A theory of gender and health. *Social Science & Medicine, 50,* 1385–1401. doi:10.1016/S0277-9536(99)00390-1

De Francis, V. (1969). *Protecting child victims from sex crimes committed by adults*. Denver, CO: American Humane Association.

Dersch, C. A., & Munsch, J. (1999). Male victims of sexual abuse: An analysis of substantiation of child protective services reports. *Journal of Child Sexual Abuse, 8,* 27–48. doi:10.1300/J070v08n01_03

DiPietro, E. K., Runyan, D. K., & Fredrickson, D. D. (1997). Predictors of disclosure during medical evaluation for suspected sexual abuse. *Journal of Child Sexual Abuse, 6,* 133–142. doi:10.1300/J070v07n02_08

Dube, S. R., Anda, R. F., Whitfield, C. L., Brown, D. W., Felitti, V. J., Dong, M., & Giles, W. H. (2005). Long-term consequences of childhood sexual abuse by gender of victim. *American Journal of Preventive Medicine, 28,* 430–438. doi:10.1016/j.amepre.2005.01.015

Easton, S. D. (2012). The disclosure process for men with histories of sexual abuse. *Clinical Social Work Journal, 12,* 1–12.

Fondacaro, K. M., Holt, J. C., & Powell, T. A. (1999). Psychological impact of childhood sexual abuse on male inmates: The importance of perception of child abuse & neglect. *Child Abuse & Neglect, 23,* 361–369.

Gilligan, P., & Akhtar, S. (2006). Cultural barriers to the disclosure of child sexual abuse in Asian communities: Listening to what women say. *British Journal of Social Work, 36,* 1361–1377. doi:10.1093/bjsw/bch309

Goodman-Brown, T. B., Edelstein, R. S., Goodman, G. S., Jones, D. P. H., & Gordon, D. S. (2003). Why children tell: A model of children's disclosure of sexual abuse. *Child Abuse & Neglect, 27,* 525–540. doi:10.1016/S0145-2134(03)00037-1

Gries, L. T., Goh, D. S., & Cavanaugh, J. (1996). Factors associated with disclosure during child sexual abuse assessment. *Journal of Child Sexual Abuse, 5*(3), 1–19.

Hershkowitz, I., Lanes, O., & Lamb, M. E. (2007). Exploring the disclosure of child sexual abuse with alleged victims and their parents. *Child Abuse & Neglect, 31,* 111–123. doi:10.1016/j.chiabu.2006.09.004

Holmes, G. R., & Offen, L. (1996). Clinicians' hypotheses regarding clients' problems: Are they less likely to hypothesize sexual abuse in male compared to female clients? *Child Abuse & Neglect, 20,* 493–501.

Holmes, G. R., Offen, L., & Waller, G. (1997). See no evil, hear no evil, speak no evil: Why do relatively few male victims of childhood sexual abuse receive help for abuse-related issues in adulthood? *Clinical Psychology Review, 17,* 69–88.

Holmes, W. C. (2008). Men's self-definitions of abusive childhood sexual experiences, and potentially related risky behavioral and psychiatric

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

Case 5:20-cr-00102-TJM Document 35-1 Filed 10/20/20 Page 10 of 10

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

outcomes. *Child Abuse & Neglect, 32,* 83–97. doi:10.1016/j.chiabu.2007.09.005

Holmes, W. C., & Slap, G. B. (1998). Sexual abuse of boys: Definition, prevalence, correlates, sequelae, and management. *Journal of the American Medical Association, 280,* 1855–1862.

Hooper, C. A., & Warwick, I. (2006). Gender and the politics of service provision for adults with a history of childhood sexual abuse. *Critical Social Policy, 26,* 467–479. doi:10.1177/0261018306062596

Hsieh, H., & Shannon, S. E. (2005). Three approaches to qualitative content analysis. *Qualitative Health Research, 15,* 1277–1288. doi:10.1177/1049732305276687

Hunter, S. V. (2006). Understanding the complexity of child sexual abuse: A review of the literature with implications for family counseling. *The Family Journal: Counseling and Therapy for Couples and Families, 14,* 349–358. doi:10.1177/1066480706291092

Jonzon, E., & Lindblad, F. (2004). Disclosure, reactions, and social support: Findings from a sample of adult victims of child sexual abuse. *Child Maltreatment, 9,* 190–200. doi:10.1177/1077559504264263

Jonzon, E., & Lindblad, F. (2005). Adult female victims of child sexual abuse multitype maltreatment and disclosure characteristics related to subjective health. *Journal of Interpersonal Violence, 20,* 651–666. doi:10.1177/0886260504272427

Kia-Keating, M., Grossman, F. K., Sorsoli, L., & Epstein, M. (2005). Containing and resisting masculinity: Narratives of renegotiation among resilient male survivors of childhood sexual abuse. *Psychology of Men & Masculinity, 6,* 169–185. doi:10.1037/1524-9220.6.3.169

Lab, D., Feigenbaum, J., & De Silva, P. (2000). Mental health professionals' attitudes and practices towards male childhood sexual abuse. *Child Abuse & Neglect, 24,* 391–409. doi:10.1016/S0145-2134(99)00152-0

Lew, M. (2004). *Victims no longer: The classic guide for men recovering from sexual child abuse.* New York, NY: Harper Collins Publishers.

Lisak, D., Hopper, J., & Song, P. (1996). Factors in the cycle of violence: Gender rigidity and emotional constriction. *Journal of Traumatic Stress, 9,* 721–743.

Mahalik, J. R., Good, G. E., & Englar-Carlson, M. (2003a). Masculinity scripts, presenting concerns, and help seeking: Implications for practice and training. *Professional Psychology: Research and Practice, 34,* 123–131. doi:10.1037/0735-7028.34.2.123

Mahalik, J. R., Locke, B. D., Ludlow, L. H., Diemer, M. A., Scott, R. P. J., Gottfried, M., & Freitas, G. (2003b). Development of the conformity to masculine norms inventory. *Psychology of Men & Masculinity, 4,* 3–25. doi:10.1037/1524-9220.4.1.3

Malloy, L. C., Lyon, T. D., & Quas, J. A. (2007). Filial dependency and recantation of child sexual abuse allegations. *Journal of the American Academy of Child and Adolescent Psychiatry, 46,* 162–170. doi:10.1097/01.chi.0000246067.77953.f7

Miles, M. B., & Huberman, A. M. (1994). *Qualitative data analysis: An expanded sourcebook.* Thousand Oaks, CA: Sage.

Morgan, D. L. (1993). Qualitative content analysis: A guide to paths not taken. *Qualitative Health Research, 3,* 112–121. doi:10.1177/104973239300300107

O'Leary, P. J., & Barber, J. G. (2008). Gender differences in silencing following childhood sexual Abuse. *Journal of Child Sexual Abuse, 17,* 133–143. doi:10.1080/10538710801916416

Paine, M. L., & Hansen, D. J. (2002). Factors influencing children to self-disclose sexual abuse. *Clinical Psychology Review, 22,* 271–295. doi:10.1016/S0272-7358(01)00091-5

Putnam, F. W. (2003). Ten-year research update review: Child sexual abuse. *Journal of the American Academy of Child and Adolescent Psychiatry, 42,* 269–278. doi:10.1097/00004583-200303000-00006

Roberts, S. T., Watlington, C. G., Nett, S. D., & Batten, S. V. (2010). Sexual trauma disclosure in clinical settings: Addressing diversity. *Journal of Trauma and Dissociation, 11,* 244–259. doi:10.1080/15299730903502961

Roman Catholic Church Sexual Abuse Cases. (2011, November 16). *New York Times.* Retrieved January 11, 2012, from http://topics.nytimes.com/top/reference/timestopics/organizations/r/roman_catholic_church_sex_abuse_cases/index.html

Ruggiero, K. J., Smith, D. W., Hanson, R. F., Resnick, H. S., Saunders, B. E., Kilpatrick, D. G., & Best, C. L. (2004). Is childhood rape associated with mental health outcome? Results from the National Women's Study. *Child Maltreatment, 9,* 62–77. doi:10.1177/1077559503260309

Sorsoli, L., Kia-Keating, M., & Grossman, F. K. (2008). "I keep that hush-hush": Male survivors of sexual abuse and the challenges of disclosure. *Journal of Consulting Psychology, 55,* 333–345. doi:10.1037/0022-0167.55.3.333

Spataro, J., Moss, S. A., & Wells, D. L. (2001). Child sexual abuse: A reality for both sexes. *Australian Psychologist, 36,* 177–183. doi:10.1080/00050060108259653

Staller, K. M., & Nelson-Gardell, D. (2005). "A burden in your heart": Lessons of disclosure from female preadolescent and adolescent survivors of sexual abuse. *Child Abuse & Neglect, 29,* 1415–1432. doi:10.1016/j.chiabu.2005.06.007

Ullman, S. E. (2003). Social reactions to child sexual abuse disclosures: A critical review. *Journal of Child Sexual Abuse, 12,* 89–121.

Ullman, S. E., & Filipas, H. H. (2005). Gender differences in social reactions to abuse disclosures, post-abuse coping, and PTSD of child sexual abuse survivors. *Child Abuse & Neglect, 29,* 767–782.

Vogel, D. L., Heimerdinger-Edwards, S. R., Hammer, J. H., & Hubbard, A. (2011). "Boys don't cry": Examination of the links between endorsement of masculine norms, self-stigma, and help-seeking attitudes for men from diverse backgrounds. *Journal of Counseling Psychology, 58,* 368–382. doi:10.1037/a0023688

Widom, C. P., & Morris, S. (1997). Accuracy of adult recollections of childhood victimization: Pt. 2. childhood sexual abuse. *Psychological Assessment, 9,* 34–46.

Received April 16, 2013
Revision received July 11, 2013
Accepted July 12, 2013 ∎